Good morning, your honors. May it please the court. I'm Theodore Boutrous representing Toyota. I'm going to try to reserve about three minutes for rebuttal. This is a putative class action involving vehicles that were subject to a voluntary recall. Counsel, let me tell you what's on my mind. Please, your honor. If there's an arbitration agreement, it's likely to be enforced. So I look for an arbitration agreement, and I looked at the documents that appear to me to be the ones that counsel are directing me to look at, and they all have language substantially to the effect, they appear to be purchase and sale agreements between the dealer and the customer, and they all have language, the creditor-seller, sometimes we or us in this contract. And then they have an agreement that says that either you or we may choose to have any dispute between us decided by arbitration and not in court and so forth. It looks as though the we and us is clearly defined to mean the dealer. Toyota is never listed as the we or us. There could have been a provision here saying Toyota is a third-party beneficiary, and you also agree to arbitrate with Toyota if it so demands, but I couldn't find one. Have I overlooked something? You have not, your honor. That's correct. The agreement is between the dealers and the consumers, but the issue here is whether Toyota is a non-signatory under principles of equitable estoppel. I couldn't understand the equitable estoppel argument. Ordinarily, there's an equitable estoppel where an individual has taken advantage in some way of a position or in some other way taken advantage so that it would be inequitable to allow him to reverse his position to take advantage of something else. And I couldn't see what benefit the purchaser had obtained that would have stopped him from taking advantage of his right to sue in court. There are a number of them, your honor, and let me just give you a couple of examples. First, the claim here is premised on the purchase agreement and the purchase price. This isn't a personal injury case. This is a case where the individuals are saying we want our money back. Yes, we want our money back. We think we paid too much when we signed on the dotted line with the purchase agreement because allegedly the vehicle was defective and is not what we expected it to be. And so it really is at bottom a commercial case involving the fundamental transaction, the purchase. And in California, Toyota cannot deal directly with the consumers. The only way it can sell its new vehicles to consumers is through the dealer. So the dealer, it's a really intimate, close relationship. Is there anything under California law that prohibits you from putting in the arbitration agreement that, to the extent that there's a suit against Toyota, that we are, for that purpose and that purpose only, you know, connected with the dealer in this narrow way? Otherwise, we are not the agent, you know, assigned, blah, blah, blah, of whatever. I mean, it seems to me a question of drafting. Your honor, the tricky thing is that it's the dealers who draft the agreements. They are the ones who deal by California law with the consumer. I understand they draft the agreements, but we all know what the relationship is between the big manufacturers and franchisees and dealers. So they may draft them, but they're certainly, if Toyota wanted to protect itself, it could put in its franchise agreement that there needs to be these kind of clauses so that Toyota can piggyback if necessary. Your honor, that's certainly a possibility. The dealers do wield a significant amount of authority and power. It's not a one-sided relationship. But here, first of all, the question of whether there's equitable estoppel, we believe, is an arbitrability issue. Okay, so I want to stop on that because I read your brief a few times, and we've had a lot of these arbitration cases, as you know, and we've read a lot of the Supreme Court arbitration case. But something bothered me in your brief. You said in your brief the first gateway dispute about whether non-signatories are bound by the arbitration clause is a, quote, question of arbitrability that was properly delegated to the arbitrator. And then you're citing the U.S. Supreme Court case. When I go to that U.S. Supreme Court case, it says that language, a gateway dispute about whether the parties are bound by a given arbitration clause, raises a question of arbitrability for a court to decide. And it seemed, I was frankly bothered by the allusion in your briefs on more than one occasion where you excised the Supreme Court language about for a court to decide. It seems to me that going to the Supreme Court case, this is a question of arbitrability that we should decide. This is not a question that should go to the arbitrator. Your Honor, I think the key difference in Howsam is the court said that unless the parties to the agreement clearly unmistakably contracted otherwise. You didn't say that. I mean, you know, the way you've done it is you should, if you're going to do that, then you should cite the case accurately for a court to decide, but there are exceptions unless there's an unmistakable agreement otherwise. So I just point that out to your brief writers. Point taken, Your Honor. I think that you need to be careful. So let's say there's three ways that you can get to arbitration, I think, here. One, if there's unmistakable language. And I think we have to agree there's not unmistakable language, right? Well, Your Honor, we disagree with that. Okay. The agreement itself says any and all disputes, including arbitrability. In this issue, I don't think there's any dispute that whether a non-signatory can compel arbitration is an issue of arbitrability. And therefore, under the terms of the agreement, the plaintiffs agreed that these sorts of issues would be submitted to the arbitrator. But that's not correct. That's not. The question of arbitrability is a question for the arbitrator where you have the parties where the agreement is and you have definite parties to the arbitration agreement. You're trying to bring in, according to the other side, people who are not parties to the arbitration agreement. That's a different issue. Where's the case that says a court can decide who's a party to the arbitration agreement as distinguished from whether a particular issue is arbitrable? That's a different question. There are several cases, Your Honor. The Apollo case from the ---- I mean, someone could ---- I could sue somebody and then someone could say it's arbitrable. There's no agreement that I've ever entered into. There's no issue particularly between me and the other party regarding any agreement. And they can say that's arbitrable. Your Honor, the ---- And I have nothing to do ---- I didn't buy this car. I could be brought in on arbitration. Your Honor, here it's the non-signatory asking the signatory to arbitrate. But there are cases. The contact case ---- They're unusual. I mean, your basic problem is that your position is you're telling a customer, you promised to arbitrate with somebody else if you had this kind of dispute, so you have to arbitrate with us. And the reasoning is the dispute is kind of similar and we have a relationship with the person that you promised to arbitrate with. However, that strikes me as cutting both ways. Toyota could refuse to sell cars to the dealers unless the dealers put in a provision saying to the customer, if you want this car, you have to agree to arbitrate any disputes about it that arise with us and with Toyota. Your Honor, the fact that there may have been other ways to get to an arbitration agreement, I don't think affects the equitable establishment. It does. There has to be some unfair taking advantage to get an equitable estoppel. Equitable estoppel doesn't just mean the court thinks it would be nice. There has to be something more concrete. I agree with that. I think, though, equitable estoppel in the arbitration context is kind of an odd name for the doctrine because it doesn't ---- it really what it's saying is are these ---- are your claims inextricably intertwined, your claims against Toyota inextricably intertwined with this agreement that you have with the dealer, therefore it all kind of collapses into a single thing. I don't ---- that seems odd that we've called it equitable estoppel, but we have. So then the question that you have to answer is how is it these claims, which are basically these breaks or failing catastrophically in their view, how are those dependent or inextricably intertwined with their financing? Let me give you an example, Your Honor. I think the clearest one is that they seek revocation of the acceptance of the purchase agreement. On page ER 392, they want to revoke the purchase agreement, number one. Number two, they claim that the implied warranty of merchantability applies to Toyota. That warranty under the commercial code is imposed by law into the purchase agreement. And the plaintiffs argue that because of the contractual and statutory relationships between Toyota and the dealers, Toyota is subject to the implied warranty that arises from the purchase agreement. So it's clearly premise. They agree that if they sought to revoke against the dealer, the dealer would be entitled to invoke arbitration. But they're trying to, Your Honor, it's worse though here. They're trying to revoke an agreement that Toyota wasn't a party to and get their money back from Toyota who didn't receive the money from the consumer. Well, that seems like an issue that goes to what the merits outcome ought to be rather than whether they've agreed to arbitrate or whether there's an equitable need for them to arbitrate with Toyota. No, Your Honor. I think it goes to the exact point that Judge McKeown was making, that the equitable estoppel doctrine is where a party, and you made it, Your Honor, where a party seeks to invoke and rely on and presume the existence of the contract in order to recover from a party and their claims are intertwined with the contract. And that's what's happening here. I see. You're saying they have a claim that relies on a contract. Exactly. So it's inequitable to try to take advantage of it on the one hand but skip the bad parts. And they're trying to get around it by not suing the dealers. They define Toyota here as including the dealers. So they're treating Toyota and the dealers as one and the same. They're not suing the dealers. In part, this is a class action. They're skipping over the dealers, but they're making allegations towards them. They claim the dealers made misrepresentations to them, disseminated the misstatements. They claim that the dealers hid the information from them, but they're suing Toyota and they want their money back, either all or part of the purchase price, from Toyota. And under law, Toyota wasn't a party to that contract. Because it's a contract action, obviously, it's a little easier to put together than a normal some class action based on faulty brakes. They could just sue Toyota for faulty brakes and there still would be a potential products liability case there. That wouldn't go to arbitration. If that's all they did, would that go to arbitration? No, Your Honor. We're not taking that position. This is really unique. And it's part of this new wave of class actions where the plaintiff's counsel, no one was hurt here. This isn't a personal injury case. They just want, this is like a UCC case. They want to rescind the, they want to get out of their car deal. They want to get out of their car deal, which they signed with the dealers. And the contract has an arbitration agreement that requires them to arbitrate any and all disputes, including arbitrability. And it does, going back to Judge Kleinfeld's point, for example, the Choi agreement talks about any dispute arising out of any resulting relationship, including a relationship with third parties who do not sign this contract. So this is page 244 and 257 of the excerpts of record. So it really is the kind of thing, this isn't a surprise. The consumer knew that a dispute over the purchase agreement, the condition of the vehicle, including relationships that relate to third parties who aren't signatories, would be subject to arbitration. And that is. You're running out of time. Yes, Your Honor. Would you point to the part of the complaint, if you can, where they seek revocation of acceptance of the purchase agreement? Yes, Your Honor. It's on page 392 of the excerpts of record. Does it have a paragraph? Yes. We have so many different paragraphs. I hear you, Your Honor. Let me just pull it right up. It's the very last. Are you looking for the agreement? No, the complaint reference. It's in the prayer for relief, Your Honor. Oh, it's in the prayer for relief. I'm in the prayer for relief. It's paragraph F. So basically F is where they're trying to get the good part but not the bad part, and that's inequitable. So you're entitled to stop them. Exactly, Your Honor. Okay. Now I understand your argument. Could you address briefly before you walk away? I'm sorry, but I'm watching the clock here. The waiver argument. You sat on this argument. You filed an affirmative defense subject to arbitration, but then you waited and things weren't going well for you. So then all of a sudden we have, ah, now we have to arbitrate it. Would you address that argument? It was over a year, if I recall, or about a year, whatever. Your Honor, it was about five months after the Supreme Court changed the seat change in the law in Concepcion. Nothing during that period really happened. There was a motion to dismiss file, but that would have had to have been filed anyway because Ms. Kramer, the lead named plaintiff, does not have an arbitration agreement. There was no discovery, no depositions, nothing produced from the plaintiffs. There was a case management order that simply asked to extend the dates because the plaintiffs really hadn't been moving this case along. In this Court's cases, the Fisher case, the Park Place case, makes clear that even if there's extensive discovery, even if there's extensive motion practices, years and years of it, that's not the kind of prejudice that would constitute waiver. And there's a strong presumption in favor of arbitration and against waiver. And so we believe that. Why did you need the Concepcion case? Your Honor, the law was very clear. On page 49 of our brief, in footnote 7, we cite all the cases. The district courts, this Court, the California courts had made it very clear that arbitration clauses with class action provisions would not be enforceable. Justice Scalia, in the Concepcion case, points out that while, as the plaintiffs pointed out, there were theoretical exceptions, I think the Supreme Court called them toothless and malleable. And so it was, I think, utterly reasonable for a lawyer and for a company to say, this is futile if we go to the judge. You know, we've got this case, this situation, and more than one case following Concepcion, and they all play out kind of the same way. You make that argument, and then they show a series of cases where Toyota invoked and actually went forward on the question of arbitrability. So what are we to make of that, that Toyota decided to pick and choose potentially and, in fact, did make pre-Concepcion arguments that would, in effect, foreshadow Concepcion? It really didn't, Your Honor. In the Creighton case, which is the case that was dismissed today that was going to be argued, Toyota put in its affirmative defense once Concepcion was granted to preserve the argument in case the law changed an affirmative defense. In the sudden acceleration cases, which are cited here, once it became clear under Concepcion that these agreements were enforceable, it invoked those provisions. And I think under the Fisher case from this court, there the court said that dicta in one of the court's decisions and the trend in the law was enough to say, excuse the party from not invoking arbitration. Here we have a much stronger situation. We had the Discover Bank law in a wave of cases that made it clear to a reasonable lawyer it would be futile to seek earlier. You're talking about the California Supreme Court case? Yes. Discover Bank. Exactly. All right. Thank you, Your Honor. Thank you. I'm going to go back and get a minute or so back. We will give you some rebuttal time. Thank you very much. Good morning, Your Honor. You may please the court. My name is Agnieszka Kaczorowski on behalf of the plaintiffs at police. Your Honor, what this case is ultimately about is an issue that Judge Quist brought up a short time ago. This is about transparent form shopping. Toyota tries to tiptoe around the salient fact of it makes a great deal about the so-called Discover Bank line of cases and it claims that prior to the ATT mobility versus Concepcion, these arbitration clauses were dead. They were invalid, unenforceable, and that there was a sea change in the law. Now, we differ with them about that, but even if I take Toyota's arguments at face value and agree with them, yes, prior to Concepcion, these clauses were invalid. What did Toyota do in the face of Concepcion? Concepcion was decided on April 27, 2011. Seven weeks after Concepcion, seven weeks, Toyota made a motion to dismiss for failure to state a claim. It merits directed attack on the complaint. And six weeks after that, it entered into the second joint case management stipulation in this litigation, giving it an overview of its defenses, not mentioning arbitration. Let's see. What did they do? They moved to dismiss? Failure to state a claim. And they moved to – we did a 12B6, and what else did they do? Just a 12B6, Your Honor. After Concepcion? No, they did not mention Concepcion. It was a merits directed attack. It said for various reasons that obviously are not before the Court today that plaintiffs failed to state UCL claims, CLRA, breach of contract, et cetera. And how was that resolved? It was denied. When? September 12th. And then when? The day after that motion is denied, Your Honor, Toyota's counsel informs plaintiff's counsel, for the first time, we intend to seek to compel arbitration. In other words, we want to change the form. We lost. Now, Toyota says, oh, a long line of cases. There is a long line of cases that say that when a party seeks to pursue arbitration after an unsuccessful result on a dispositive motion, and that is the Eighth Circuit in the Hooper case, the Second Circuit in Kramer, the Second Circuit in Kramer, the Central District of California in the Steiner case, the Northern District of California in Gonsalves, and the Northern District of Illinois in Kane. All these courts have recognized, all federal courts have recognized, that when you try to pursue arbitration after you've lost a dispositive motion, and especially here, a merits directed. This wasn't a jurisdictional motion. This was a merits directed. They sought to get rid of these claims on the merits. When that didn't work, they invoked, oh, arbitration. These courts have repeatedly recognized this. Now, Judge Carney didn't hang that alone on them. It noted that they waited two years, and that points to another problem with Toyota analysis. It's a brief and engages in a completely granular analysis. Well, two years is necessary or even matters much to your argument. What matters to your argument is after Concepcion came down, they moved for and lost a motion to dismiss, and only after losing did they seek arbitration. Yes, exactly. That, Your Honor, is alone, in my view, in our view, is alone enough to find basal waiver. Now, Toyota tries to tiptoe around that. It cites this court's decision in the Sovak case. Well, in Sovak, this court rejected the plaintiff's waiver argument because the plaintiff failed to articulate prejudice. We do articulate prejudice, and the Eighth Circuit in Hooper, the Second Circuit in Kramer, both recognize that when a party faces a redo to have to relitigate a motion, a merits motion on which it has prevailed, that is, per se, prejudicial. Moreover, in the Sovak case, the plaintiff couldn't be prejudiced. Prejudice is second bite at the same apple. Yes. A second bite at the apple is prejudicial. What standard are we reviewing the district court's waiver determination? Your Honor, the general rule is that it is de novo. However, this court in Nagrompa noted that underlying factual findings made in connection with that determination were reviewed for clear error, and I'd respectfully submit that Judge Carney's determination here was a he reviewed the totality of the circumstances. He looked at the timing of Toyota's motion. Would you, in your view, then, for example, his prejudice finding would be one we'd look at for clear error but then factor that in de novo to the waiver standards? Yes. It is a mixed question of fact and law because he, as the judge presiding over this MDL, was best positioned to know what has gone on in this litigation, to look to the passage of time, to look to the activity. Toyota tries to minimize the activity that occurred in this litigation. There were the negotiation of case management orders, a protective order governing discovery. Discovery had gotten underway. There was sufficient activity. And, of course, most saliently, the 12B6 motion that was briefed and decided, and only when that collapsed on Toyota did it suddenly say, we now want to change form. What, in fact, Toyota has said, Your Honor, when you strip away all of the nice rhetoric in these well-written briefs, what Toyota essentially has said, Thank you, Judge Carney, for your advisory opinion. We now wish to shift from a judicial to an arbitral form, and that is untenable, and this Court should not condone that. If the waiver argument, if you were not successful, just hypothetically on that, and we were looking then at the non-signatory status, would you respond to Mr. Buttritt's argument that at least in two aspects of the complaint, the implied warranty of merchantability, which relates to the seller, and also revocation of the acceptance of the purchase agreement in your prayer for relief, actually tie your allegations inextricably to the purchase agreement and put them within the arbitration clause? The answer to that is, Toyota, once again, is incorrect, Your Honor. This Court in the Mundy case noted that there is no basis for a quotable estoppel if, at bottom, you do not have to look to the contract to resolve the claims, and that is the case here. The plaintiffs complain of a safety defect. Toyota's concealment at the highest corporate level is a safety defect. But how do you get out of the contract? I mean, I presume that, you know, we have sometimes weird situations like with banks and foreclosures where, you know, things happen, but you still have to keep paying on the contract. And then your complaint says that you want the revocation of acceptance, which I assume is revocation of acceptance. It's rescission, Your Honor. Rescission of what? It's rescission. Of the contract? No, it's rescission. Oh, wait, wait. Yeah. Well, rescission of the sale, not the contract. I mean, cancellation of the sale. You don't need to look to the contract to resolve that. The purchase price, that has nothing to do with the allegations in the complaint. Counsel, the Mundy language is a little broader than that. Mundy says that where a non-signatory – well, the critical – it says there are two things. A non-signatory may be held and a signatory may be held. And in the second, it says a signatory may be required – signatory is your side – may be required to arbitrate a claim brought by a non-signatory – actually, I misspoke – because of the close relationship between the entities involved as well as the relationship of the alleged wrongs to the non-signatory's obligations and duties in the contract and the fact that the claims are intertwined with the underlying contractual obligations. Now, that language is a little vague and hard for me to use, but it seems like it fits. First of all, there's a close relationship between the dealer and the manufacturer. And second, the alleged wrongs – basically, the ABS brakes aren't what they're supposed to be – is related to Toyota's obligations and duties as well as the dealer's. All the dealer does, after all, is pass on the car that Toyota makes. Since revocation of the contract with the dealer is sought because of the manufacturer's fault in putting allegedly bad brakes on the car, it would seem to be intertwined. But as I say, the language is vague and might be interpreted differently. What should we do with that language? Your Honor, that language – Monday is part of a long line of cases, Britain and other courts – intertwined means – is the plaintiff either attacking a part of the contract or seeking to assert rights under the contract? And we do neither. As far as Toyota's relationship with the dealers, the second basis of equitable estoppel is, has there been concern – You're trying to get your money back under the contract. I mean, another thing you could do is just sue Toyota and say the cars just dropped $1,000 each in Edmunds Blue Book value for trade-ins because of this ABS brake. And that has nothing to do with your contract with the dealer. And that's one of our theories, Your Honor. That's your only theory. That's right. You've also got this theory on the contract. Right, but that doesn't make it intertwined because you don't need to look to the contract to resolve it. The fact that one of the possibilities of relief that we ask for is to cancel the purchase, that doesn't make it intertwined. Intertwined has to be that the dealers were part and parcel of the scheme, that they colluded with Toyota. There are no allegations in this complaint. I invite the Court to review it. It's at pages 349 to 92 of the excerpt of the record. There are no allegations here that – Why does it have to be some sort of collusion? Well, because there are two bases for equitable estoppel to be invoked for a non-signatory to be able to assert rights under an arbitration clause. Either that the claims are intertwined, that they are – I don't understand why the class of intertwined claims only includes collusion. No, that's an alternative. In other words, whether the claims are intertwined, they're not. These claims, we do not – these, as Judge Carney noted, these are financing and insurance agreements. We complain about a safety defect. They are not intertwined. You don't need to look to these contracts to resolve plaintiff's claims. They have nothing to do with them. As far as the warranty assertions, these contracts – Can I ask you a question? I'm sorry, if I could just – No, I want to understand. You don't need to look to the contracts. Right, no, but the – If you win – Yeah, sorry. No, you can keep talking. No, I just wanted to point out. No, don't keep talking. The answer is listen to the questions. Sorry, sorry. Okay? If you win your case, will – under the relief you seek, will the plaintiffs be relieved, the class members be relieved of their contracts with the dealers? That is possibly one scenario, Your Honor. The other is simply that we recover a diminution in the value. I mean, that's ultimately a merits adjudication, and that's not – doesn't really – Well, it goes to what you're asking for, because you certainly can sue Toyota for the defective brakes, products liability, et cetera. But my question is, are you also asking, by virtue of the relief in your complaint, to get out of the contracts that your clients' class members would have signed? We do ask for revocation of acceptance as one form of possible relief, but that doesn't render them intertwined. The fact that we ultimately, that when a form of relief, because you don't need a – the fact finder here would not need to go to the agreements to resolve that, and that is the bottom line test that courts have looked to. Do you really need to look to the contract to resolve these claims? And you don't. Why don't we have to read it to see whether it can be set aside? Because, Your Honor, the – The contract might say it doesn't. I know it doesn't because I read it, but it might say that if there are any misrepresentations in the sales literature, you can't – you still can't revoke the contract. So you'd have to read the contract to see if it says something like that. But it's a case-by-case determination. In this case, you don't need to. You're going to revoke. You're going to revoke? What contract are you going to revoke? If you have a revocation, it has to be the contract between your client and the dealer. But you're suing Toyota. Isn't that being intertwined? No. I'm supposed to submit it's not. It doesn't make it intertwined because – It still hasn't articulated it, I think. Why not? Because the case law on equitable estoppel repeatedly looks to whether distinguishes independent misconduct, as is the case here. Toyota's suppression of a safety defect from conduct bound up in parcel with the contract. And, again, this court in Monday – If you have a revocation, the only contract – the only thing that can be revoked here is the contract. And that is between your client and the dealer. That's correct, Your Honor. That's correct. But, again, I don't think that renders it intertwined. If I can briefly address, because I see my time is running out, the issue of what Toyota calls arbitrability. The issue is not arbitrability. Arbitrability is, as the Supreme Court explained in House, some concerns whether parties have agreed to submit particular kinds of disputes for resolution by an arbitrator. This has to do, as Judge Carney noted below, and Judge Selna in the related unintended acceleration, MDL, concerns whether the parties are subject to this agreement. And a long line of cases from the Supreme Court's decision, Prima-Paint, more recently Rent-A-Center, this Court's decision, Nagrampa, all note that when, as here, the plaintiff disputes whether the validity of the arbitration clause, and we do on three grounds, no basis for equitable estoppel. Even if there is equitable estoppel, there is a waiver. And, thirdly, that these contracts are substantively and procedurally unconscionable. A court should resolve that. I know you've run out of time, but I just obtained the presiding judge's permission to ask another question. When I look at the case as a whole, I can't imagine any result in a class action in court against Toyota on account of these ABS breaks that results in all of the customers returning their Toyotas to the dealer and taking their money back and leaving. The usual thing that happens when there's something wrong with your car is there's a recall notice, you bring it in, they fix whatever the defect was. About the only time you see people really returning the car, taking their money back, and walking away is in the Lemon cases, and that's not what's alleged here. I'm trying to figure out what the point of the action is. It kind of looks like all that's down the road is an attorney's fee award and maybe a CPRA award to the Institute for Highway Safety or some such thing, or maybe a coupon for a discount on your next Toyota. What's really going to come of this if you win everything? No, Your Honor, because there are several possible scenarios. One is the revocation of these contracts, but the other is diminution of value, that the class members would recover the diminished value as would be determined by an expert. What did this break defect do to the value of each car and quantify it? Was there a recall notice and did Toyota repair the ABS problem for free on every one? Well, there was a recall notice. There are certain vehicles that are subject to recall notice. This case, the Kramer case, involves vehicles subject to the recall. To the best of my knowledge, some of the plaintiff's vehicles had not been resolved, and I'm not sure my co-counsel would best speak to that. But yes, the other case, Creighton, involved non-recall vehicles. But a diminution in value, an award of damages for the diminution in value or restitution under the UCL, that's the allowable form of relief there. But this isn't about CPRA award. These plaintiffs bought a vehicle that a serious defect was concealed, and that has a serious effect on the value of the car, whether plaintiffs would have bought this vehicle in the first place. I mean, who would really want to buy a vehicle that you know that there's a serious defect that would affect the ability to stop the car? In fact, one of our plaintiffs suffered a crash days after buying the car. All right. Thank you. Thank you, Your Honor. You may have two minutes for rebuttal. Thank you very much, Your Honor. Let me start with this intertwining issue. He has now said they are trying to revoke the contracts that include the arbitration clause. There couldn't be a more intimate intertwining imaginable. Can you help me on something else that's really on my mind? Yes, Your Honor. The one thing that you really can't get away with because of the waiver doctrine is saying, well, let's wait and see how things go in district court, and then we'll decide whether we want to arbitrate. And then things go sour in district court. So you say, well, we're skipping over to another forum altogether. That's the one thing that you can't do that the waiver doctrine prevents. Why doesn't that fit here since Toyota waited until after getting a decision on its motion to dismiss? Your Honor, I think the easiest reason or the clearest reason is the motion to dismiss would have had to have been filed anyway. Everything that happened would have happened anyway because Ms. Kramer, the lead named plaintiff – That would have had to be filed. What normally you do, Concepcion comes down, you say, hallelujah, we're potentially out of federal court into arbitration, and you file that. But by filing the motion to dismiss, that wouldn't have to be filed if you filed a Concepcion motion and the court ruled on it. It would have, Your Honor. Why? Because Ms. Kramer, one of the named plaintiffs, does not have an arbitration clause. So this class includes named plaintiffs who have arbitration clauses, but some of them didn't. And under the deadline – Well, did you say in your – did you say this only applies to the people that don't have an arbitration clause? No, Your Honor. The motion to dismiss did go forward and – Because you hoped to get everybody out of – get Toyota out of the soup completely. Only – the motion to dismiss applied to everyone. That's true, Your Honor. And this is not a forum shopping situation. This is a situation where the company read Concepcion, reviewed its options, looked at the law in this equitable estoppel area. We think it strongly supports this, but it is a somewhat unique area of the law. So Kramer's dealer did not have one of those arbitration clauses? That's correct, Your Honor. Not – no arbitration clause at all, or just no arbitration or class action? Not at all. Not at all. It did not have an arbitration clause at all. So really, your attack isn't so much about Kramer as the class action. That's – well, yeah, it's – If it's just Kramer acting individually, you would stay in district court. Exactly. And Kramer then would seek class certification on her own. And so this claim that all this activity happened – Kramer was not seeking class certification. It was just Kramer versus maybe the dealer in Toyota. There would be no motion to arbitrate or to compel arbitration. You'd just litigate in district court. Correct. And file a motion to dismiss on all the same legal grounds. Right. And so it is – it's a situation I think the Fisher Court looked at and said three-and-a-half years, it's not perfect. This is not a forum shopping. We would have been in that forum anyway. And the other point that counsel made about the recalls – Did you raise in your motion to dismiss the specter of Concepcion down the road? No, Your Honor. We did not. We did – just a couple of factual points in terms of the timing. The operative complaint was filed the day before Concepcion. There had been consolidation, et cetera. And then Toyota did in its answer, once the motion to dismiss was denied, raised arbitration in September of 2011 as an affirmative defense and then a few weeks later filed its motion to compel arbitration. And the cases are very clear. It's a very heavy burden under these circumstances to find waiver. We don't think the plaintiffs have met it. The other point – I know my time is up. I just wanted to make this point on the price – on the argument that counsel makes that they're not attacking any term in the agreement. They are attacking the most fundamental term in the agreement, the price term. They're arguing that they didn't get their benefit of the bargain. The bargain in the purchase agreement, which they seek to revoke, and even if they go for their alternative remedy, they want a portion of that purchase price, which is a term of the agreement, returned to them by Toyota, which wasn't a party to the contract. The contract has an arbitration clause. That's why we think, in fairness, they're invoking those provisions. They're trying to revoke those provisions. They're trying to get their money back. Could you just clarify one thing? When you buy a car from these dealers, as they've alleged, and you have – and the car is financed, so you have this financing. It's an integrated purchase and finance agreement. Is there any other agreement that's just I buy the car and then I finance the car, or is there a single agreement? It depends. Some have the financing built right into the agreement, but the purchase price is in the agreement that has the arbitration clause. Sometimes the financing in different – depends on different dealers, how they finance. It can be in separate agreements. Here, that price term that they claim was too high is in the purchase agreement that they seek to revoke, and it's in the agreement that has the arbitration clause. And you can't have it both ways. That's really the fundamental basis of this doctrine. We think it should be applied here. And I'll end with this. They proceed from the assumption that arbitration is a bad thing. The Federal Arbitration Act presumes it's a positive thing. There's a policy favoring arbitration, and it can lead to swift results for people who actually think they were injured. And we think that all their arguments proceed from that sort of hostility to arbitration that the Federal Arbitration Act was meant to eliminate. Thank you very much. The case just argued, Kramer v. Toyota, is submitted. I'd like to thank both counsel for your argument this morning.
judges: Quist, Kleinfeld, McKeown